UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH BIASI, individually and on behalf
of all others similarly situated,

                                 Plaintiffs,                         6:15-CV-0454
                                                                 (GTS/ATB)

v.

WAL-MART STORES EAST, LP; EARLENE
SCHAEFFER; RYAN DUNPHY; and
REBECCA PAUKSTELA,

                                 Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

E. STEWART JONES HACKER MURPHY, LLP          RYAN M. FINN, ESQ.
  Counsel for Plaintiffs                             DAVID I. IVERSEN, ESQ.
7 Airport Park Boulevard
Latham, NY 12110-0104

McCARTER & ENGLISH, LLP                         PAMELA J. MOORE, ESQ.
  Counsel for Defendants                        SAMI ASAAD, ESQ.
185 Asylum Street
CityPlace I
Hartford, CT 06103-3495

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

        Currently before the Court, in this employment discrimination and uniform maintenance

pay class action filed by Joseph Bilas ("Plaintiff") against Wal-Mart Stores East, LP ("Wal-

Mart"), Earlene Schaeffer, Ryan Dunphy and Rebecca Paukstela (collectively "Defendants"), is

Defendants' motion to dismiss the second cause of action in Plaintiff's Second Amended

Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ.

P. 12(b)(6). (Dkt. No. 6.) For the reasons set forth below, Defendants' motion is denied.

## I.      RELEVANT BACKGROUND

### A.      Relevant Procedural History

On March 23, 2015, Plaintiff filed a Complaint in the New York State Supreme Court, County of Montgomery, asserting a cause of action under the New York State Human Rights Law for sexual harassment, gender discrimination, and wrongful discharge from his employment with Wal-Mart.  (*See generally* Dkt. No. 1, Attach. 1 [Pl.'s State Ct. Compl.].)  In addition, Plaintiff asserted a cause of action on behalf of himself and all others similarly situated for violations of New York State's minimum wage laws relating to the failure to pay a "uniform maintenance pay."  (*Id.*, ¶ 3.)  On April 15, 2015, Plaintiff removed his state court action to the United States District Court for the Northern District of New York, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  (Dkt. No. 1 [Notice of Removal].)

After Defendants filed the present motion to dismiss, Plaintiff filed an Amended Complaint, dated May 18, 2015, in an attempt to moot Defendants' motion to dismiss.  (Dkt. No. 18, at 1 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 17 [Pl.'s Am. Compl.].)  Thereafter, by stipulation of the parties, Plaintiff filed a Second Amended Complaint to include a claim alleging a violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964.  (Dkt. No. 26 [Parties' Stipulation]; Dkt. No. 28 [Pl.'s 2d Am. Compl.].)  Defendants contend that their motion to dismiss Plaintiff's second cause of action has not been mooted by the amendments to Plaintiff's pleadings.  (Dkt. No. 21, at 1 [Defs.' Reply Mem. of Law].)

### B.      Plaintiff's Second Amended Complaint

The allegations relevant to Plaintiffs' second cause of action are as follows.  Plaintiff was employed by Wal-Mart as a non-exempt hourly employee for approximately twenty years.  (Dkt. No. 28, ¶ 12 [Pl.'s 2d Am. Compl.].)  As part of his job, Plaintiff was required to wear a vest that

displayed a Wal-Mart logo while working in Wal-Mart stores.  (*Id.*, ¶ 48.)  Despite Wal-Mart's

requirement that employees wear a uniform while performing their duties, Wal-Mart did not pay

to launder or maintain Plaintiff's uniforms.  (*Id.*, ¶¶ 47, 58-59.)  Plaintiff claims that, under 12

NYCRR 146-1.7, Wal-Mart was required to provide him and other similarly situated employees

with enough uniforms consistent with the average number of days they worked per week or to

compensate them with a "uniform maintenance pay" in order to pay for the maintenance of their

uniforms.  (*Id.*, ¶ 49.)  Plaintiff worked five days per week but was given only two vests.  (*Id.*, ¶

56.)  Plaintiff was informed that Wal-Mart's policy was to give two uniforms to full-time

employees and one uniform to part-time employees.  (*Id.*, ¶ 58.)

Based upon the foregoing, Plaintiff seeks to establish a class consisting of all persons

who work, or have worked, as a non-exempt employee for Wal-Mart in the State of New York

during the past six years.  (*Id.*, ¶ 61.)  Furthermore, Plaintiff seeks on behalf of himself and the

individual class members, among other things, damages in the amount of their unpaid minimum

wage for uniform maintenance pay.  (*Id.*, ¶¶ 74-77.)

## II.   PARTIES' ARGUMENTS ON DEFENDANTS' MOTION

### A.   Defendants' Memorandum of Law-in-Chief

In support of their motion to dismiss Plaintiff's second cause of action, Defendants argue

that 12 NYCRR § 146-1.7 is inapplicable to Wal-Mart.  (Dkt. No. 6, Attach. 1, at 4-5 [Defs.'

Mem. of Law].)  More specifically, Defendants argue that this provision is contained within New

York's Hospitality Industry Wage Order, 12 NYCRR § 146-1 *et seq.*, which applies only to the

hospitality industry.  (*Id.*)  Defendants argue that, under 12 NYCRR § 146-3.1, "hospitality

industry" is defined as either a restaurant or hotel, and that Plaintiff's Second Amended

Complaint fails to allege facts plausibly suggesting that Wal-Mart falls under either of these definitions. (*Id.*)

**B.      Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Defendants' motion, Plaintiff argues that Wal-Mart is subject to New York's Hospitality Industry Wage Order because it falls under the regulation's definition of a restaurant. (Dkt. No. 18, at 2 [Pl.'s Opp'n Mem. of Law].) Under the Hospitality Industry Wage Order, the term "restaurant" includes

> any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants.

12 NYCRR § 146-3.1(b). Plaintiff argues that Wal-Mart is a restaurant under this definition because it prepares and sells a wide variety of food and beverage items, including rotisserie chicken, fried chicken, chicken wings, macaroni and cheese, mashed potatoes, and a large variety of sandwiches and bakery items. (Dkt. No. 18, at 2 [Pl.'s Opp'n Mem. of Law].) In addition, Plaintiff argues that Wal-Mart offers catering services. (*Id.*)

**C.      Defendants' Reply Memorandum of Law**

In reply, Defendants make three arguments. First, Defendants argue that the Hospitality Industry Wage Order does not transform every convenience store, grocery store, or retail department store into a restaurant merely because they may have a deli section or offer certain food items for sale. (Dkt. No. 21, at 2 [Defs.' Reply Mem. of Law].) Rather, Defendants argue that the definition of "restaurant" under the Hospitality Industry Wage Order requires that the establishment be an "eating or drinking place." (*Id.*)

Second, Defendants argue that, with regard to its historical intent, the Hospitality Industry Wage Order is "rooted in" New York Labor Law § 653.2, which applies only to "Food Service Workers." (*Id.*)  Defendants argue that, under Labor Law § 651.9, food service workers are defined as employees "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries, including, but not limited to, wait staff, bartenders, captains and bussing personnel; and who regularly receive tips from such guests, patrons or customers." (*Id.*)  Furthermore, Defendants argue that, while the N.Y. Commissioner of Labor appointed a Wage Board in March 2009 to review the regulations governing the wages and tips paid to workers in the restaurant and hotel industries (in compliance with an amendment to Labor Law § 653.2), no one from the retail industry was appointed to the Wage Board. (*Id.* at 3.)  Similarly, Defendants argue that the Board's report and recommendations of September 2009 gave no indication that retail department stores should be considered "eating or drinking places" or are otherwise part of the hotel or restaurant industries. (*Id.* at 3-4.)

Third, and finally, Defendants argue that Plaintiff has not alleged in his Second Amended Complaint facts plausibly suggesting that he is an employee as defined by the Hospitality Industry Wage Order. (*Id.* at 4-5.)  In any event, Defendants argue that Plaintiff's job responsibilities had no connection with the alleged restaurant operations of Wal-Mart. (*Id.* at 5.)

### D.      Plaintiff's Sur-Reply Memorandum of Law

In his sur-reply memorandum of law (filed with leave of the Court), Plaintiff makes three arguments.  First, Plaintiff argues that Defendants' argument that the Hospitality Industry Wage Order is "rooted in" New York Labor Law § 653.2 and applies only to "Food Service Workers" is incorrect. (Dkt. No. 25, at 3 [Pl.'s Sur-Reply Mem. of Law].)  In support, Plaintiff argues that

the Hospitality Industry Wage Order applies to employees other than just "Food Service Workers." (*Id.*)  Plaintiff cites the Hospitality Industry Wage Order's Regulatory Impact Statement, which states that "desk clerks, cleaning workers, maintenance & grounds workers, porters, janitors, and others" also receive protection under the Hospitality Industry Wage Order. (*Id.*)  Furthermore, Plaintiff argues that, under 12 NYCRR § 146-3.3(a), there are three categories of employees protected by the Hospitality Industry Wage Order: "food service workers," "service workers," and "non-service workers." (*Id.*)  Plaintiff argues that he is a non-service worker because he did not receive tips and his job responsibilities included delivering food and beverage products to the area in Wal-Mart that prepared and served food.  (*Id.*) Plaintiff acknowledges that the Second Amended Complaint does not allege what his job duties were but that they are "absolutely irrelevant to the issue at hand as all employees covered by the Hospitality Industry Wage Order are covered by the Uniform Maintenance portion of the regulation, regardless of their classification." (*Id.* at 4-5.)

Second, Plaintiff argues that Defendants have selectively quoted 12 NYCRR § 146-3.1(b) in support of their argument that Wal-Mart is not a restaurant.  (*Id.* at 4.)  Plaintiff notes that the definition of a restaurant applies to "any" entity that sells food or beverage to the public.  (*Id.*) In addition, Plaintiff cites 12 NYCRR § 146-3.1, which states that hospitality industry excludes only the following:

> (1) establishments where the service of food or beverage or the provision of lodging is not available to the public or to members or guests of members, but is incidental to instruction, medical care, religious observance, or the care of persons with disabilities or those who are impoverished or other public charges; and

> (2) establishments where the service of food or beverage or the
> provision of lodging is offered by any corporation, unincorporated
> association, community chest, fund or foundation organized
> exclusively for religious, charitable or educational purposes, no
> part of the net earnings of which inures to the benefit of any
> private shareholder or individual.

(*Id.*)  Plaintiff argues that these exclusions demonstrate the breadth of the Hospitality Industry
Wage Order.  (*Id.* at 5.)  Accordingly, because Wal-Mart sells food and beverage for human
consumption both onsite and through its catering services, Plaintiff argues that it is a restaurant
under the regulation's definition.  (*Id.*)

Third, Plaintiff argues that Defendants have not established, as a matter of law, that Wal-
Mart does not fit the definition of a restaurant.  (*Id.* at 6-7.)  Plaintiff argues that Defendants have
requested that this Court dismiss his claim based upon Defendants' interpretation of the
regulation, which is unsupported by the factual allegations of Plaintiff's Second Amended
Complaint. (*Id.*)  Plaintiff argues that, taking his allegations as true, he has set forth a plausible
claim for uniform maintenance pay.  (*Id.* at 7.)

## III.     RELEVANT LEGAL STANDARD

It has long been understood that a defendant may base a motion to dismiss for failure to
state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge
to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal
cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16
(N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are
appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading
contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957),  that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id.* at 556-70, 127 S. Ct. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]."  *Id.* at 555, 127 S. Ct. at 1965, n.3.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id.* at 554, 127 S. Ct. at1965.[1]

---

[1]    It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added).  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added).  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.  *See Rusyniak*, 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." *Id*.

## IV.    ANALYSIS

After carefully considering the matter, the Court finds that Plaintiff has alleged facts plausibly suggesting a claim for uniform maintenance pay for the reasons stated in Plaintiff's opposition and sur-reply memoranda of law. (Dkt. No. 18, at 1-2 [Pl.'s Opp'n Mem. of Law];

-10-

Dkt. No. 25, at 3-7 [Pl.'s Sur-Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Although the Court finds that Plaintiff has stated a claim under the Hospitality Industry Wage Order, the Court does not adopt the Plaintiff's expansive interpretation of what constitutes a restaurant under 12 NYCRR § 146-3.1.  More specifically, the Court has not found cases in which the Hospitality Industry Wage Order was applied in the context of a retail department store that also offered dining services.  Without case precedent to assist the Court's analysis on this issue, the Court cannot find that the Hospitality Industry Wage Order is intended to include employees that work strictly within a department of a store that has no relation to its food service operations.  In other words, the Court would have difficulty accepting the argument that the Hospitality Industry Wage Order applies to employees that work strictly within the electronics or clothing departments of a retail store for example and do not assist in any way with the store's dining services.

The Court believes this is important because the Second Amended Complaint fails to allege facts plausibly suggesting what Plaintiff's job duties were while he was employed by Wal-Mart.  The Second Amended Complaint does, however, allege that Plaintiff assisted with "unloading grocery items" at Wal-Mart (Dkt. No. 28, ¶ 20 [Pl.'s 2d Am. Compl.]), which the Court believes is sufficient–albeit barely–to plausibly suggest that he is a "non-service worker" for purposes of the Hospitality Industry Wage Order.

In sum, the Court finds that Plaintiff has alleged facts plausibly suggesting that Wal-Mart is a restaurant under 12 NYCRR § 146-3.1(b) by alleging that Wal-Mart "prepares and offers food or beverage for human consumption either on any of its premises or by such service as

catering . . . or counter service to the public."  12 NYCRR § 146-3.1(b).  While Wal-Mart may

not be a restaurant in the traditional sense, as Defendants contend, Plaintiff has alleged facts

plausibly suggesting that it is an establishment that offers restaurant concessions.  *See* 12

NYCRR § 146-3.1(b) ("The term restaurant includes but is not limited to *restaurant operations*

*of other types of establishments, restaurant concessions in any establishment* and concessions in

restaurants.") (emphasis added).  Whether this claim will survive a motion for summary

judgment may be a different matter.

     **ACCORDINGLY**, it is

     **ORDERED** that Defendants' motion to dismiss Plaintiff's second cause of action in his

Second Amended Complaint for failure to state a claim (Dkt. No. 6) is **<u>DENIED</u>**; and is further

     **ORDERED** that this case is referred back to Magistrate Judge Baxter for a Rule 16

conference and the setting of pretrial scheduling deadlines.

Dated: March 14, 2016
       Syracuse, New York

                                Hon. Glenn T. Suddaby
                                Chief U.S. District Judge