UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH BIASI, individually and on behalf of all others similarly situated, | :<br>:<br>:<br>: |
| Plaintiff, | : Civil Action No.: 6:15-cv-00454-GTS-ATB<br>:<br>: |
| v. | :<br>: |
| WAL-MART STORES EAST, LP., EARLENE SCHAEFFER, RYAN DUNPHY, and REBECCA PAUKSTELA | :<br>:<br>: |
| Defendants. | :<br>:<br>: |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT WAL-MART STORES EAST, LP.'S MOTION FOR SUMMARY JUDGMENT

McCARTER & ENGLISH, LLP
City Place I
185 Asylum Street
Hartford, CT 06103
Pamela J. Moore
Sami Asaad
*Attorneys for Defendants*

ME1 23404408v.2

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................1

POINT I    THE AMSTERDAM WALMART DOES NOT CONTAIN RESTAURANT OPERATIONS AS DEFINED BY THE HIWO .......................1

    A.   A "Plausible Case" Is Insufficient To Overcome Summary Judgment ..................1

    B.   Plaintiff Ignores The Text Of The HIWO And The NYSDOL Guidance ..............3

    C.   It Is Undisputed That Walmart Did Not "Provide Facilities For On-Premises Food Consumption" Or "Engage In Catering Either In The Home Or A Place Of Business" .......................................................................5

POINT II   PLAINTIFF DID NOT WORK IN THE DELI DEPARTMENT.........................7

POINT III  THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE WASH AND WEAR EXCEPTION WAS SATISFIED .....................................9

POINT IV   PLAINTIFF'S CROSS-MOTION TO AMEND SHOULD BE DENIED..........10

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................................... 2, 3

*Carcamo-Flores v. Immigration & Naturalization Service*,
  805 F.2d 60 (2d Cir. 1986) ........................................................................................................ 4

*Carvente-Avila v. Chaya Mushkah Rest. Corp.*,
  2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016) ........................................................... 4

*Gregory v. Stewart's Shops*,
  2015 U.S. Dist. LEXIS 24412 (N.D.N.Y Mar. 1, 2015) ........................................................... 9

*Gregory v. Stewart's Shops*,
  2016 U.S. Dist. LEXIS 89576 (N.D.N.Y. 2016) ("*Gregory II*") ....................................... 9, 10

*Henzel v. Delaware Osego Corp.*,
  285 F. Supp. 271 (N.D.N.Y. 2003) (Sharpe, J.) ........................................................................ 2

**RULES**

Fed. R. Civ. P. 20(a)(2) .................................................................................................................. 10

Rule 20 ........................................................................................................................................... 10

Rule 56 ............................................................................................................................................. 2

**REGULATIONS**

12 NYCRR § 146-3.1 .................................................................................................................. 3, 4

**PRELIMINARY STATEMENT**

In opposition, Plaintiff admitted (or failed to controvert) virtually all of Walmart's material facts (*see* Consolidated Statement of Material Facts ("CSOF")).  He attempts to stave off summary judgment by submitting improper declarations—including his own declaration in which he contradicts his prior sworn deposition testimony.  A separate Motion to Strike, filed herewith, addresses this issue in detail. Plaintiff also submitted a Memorandum in Opposition ("Opposition"), which contains various arguments that either rely on the incorrect legal standard for a motion for summary judgment or rely on no law whatsoever.

Moreover, all of Plaintiff's supplemental statements of fact are completely immaterial as they pertain exclusively to an exception to the Hospitality Industry Wage Order ("HIWO") on which Walmart did not rely in its Motion for Summary Judgment.  Accordingly, the Opposition fails to establish a genuine issue of material fact and fails to refute Walmart's argument that judgment should enter as a matter of law.  The Opposition contains several contentions lumped together under one heading: "Wal-Mart is Covered by the Hospitality Wage Order Since It Sells Food and Beverage For Human Consumption" *See* Opposition at 3[1] (Point II).  Each of these contentions is addressed separately below.

**ARGUMENT**

**POINT I**

**THE AMSTERDAM WALMART DOES NOT CONTAIN RESTAURANT OPERATIONS AS DEFINED BY THE HIWO**

**A.    A "Plausible Case" Is Insufficient To Overcome Summary Judgment**

Plaintiff contends that summary judgment should be denied because he has plead "a plausible case:"

---

[1] Numbers in citations refer to the document's internal pagination, not the number stamped at the top.

> [T]he facts alleged by plaintiff--and deemed true at this stage of the litigation--set forth a plausible case that Wal-Mart should be covered by the Hospitality Wage Order since it sells food and beverage for human consumption.

Opposition at 9. Setting forth a plausible claim, however, is simply not enough to survive a motion for summary judgment. In opposing a properly supported motion for summary judgment, a plaintiff may not rely on "the mere allegations or denials of [his] pleadings." *Henzel v. Delaware Osego Corp.*, 285 F. Supp. 271, 275 (N.D.N.Y. 2003) (Sharpe, J.) (quoting *St. Pierre v. Dyer*, 208 F.3d 392, 404 (2d Cir. 2000). Rather, "the adverse party's response, by affidavits or as otherwise provided by in Rule 56, ***must*** set forth ***specific facts*** showing that there is a genuine issue for trial." *Id.* (emphasis added). This standard is far more demanding than that applicable to a motion to dismiss, where the pleading must only contain at least "'some factual allegation[s]'… [m]ore specifically, the '[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level],' assuming (of course) that all the allegations in the complaint are true." Dkt. No. 30, p. 9, citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).

Plaintiff mistakenly believes that Wal-Mart's summary judgment motion is governed by the same standard as a motion to dismiss, and repeatedly relies on this meritless argument in an attempt to avoid summary judgment. *See* Opposition at 5 ("Based upon the facts pleaded in the complaint…") ("As pled in the Third Amended Complaint …"), 6 ("Plaintiff has alleged specific facts…") ("Plaintiff Biasi and Mecca allege ….."), 8 ("Rather, the facts alleged by plaintiff…"), and 9 ("It is respectfully submitted that the Third Amended Complaint sets forth a plausible claim…").

Indeed, Plaintiff relies on the prior Order of this Court denying Wal-Mart's motion to dismiss. That Order, however, necessarily applied the *Twombly* standard which is wholly

2

inapplicable here.  In fact, the Court made clear that bare allegations in a complaint would not be enough to survive a motion for summary judgment stating:

> Plaintiff has alleged facts plausibly suggesting that it is an establishment that offers restaurant concessions…. Whether this claim will survive a motion for summary judgment is a ***different matter***.

Dkt. No. 30, p. 12 (emphasis added).  Thus, Plaintiff's reliance on the *Twombly* standard is misplaced.

### B.   Plaintiff Ignores The Text Of The HIWO And The NYSDOL Guidance

Plaintiff contends that the HIWO "applies to ***any entity*** that sells food or beverage to the public."  Opposition at 4 (emphasis added).  This is a misstatement of the HIWO's definition of "restaurant," and completely ignores the New York State Department of Labor's ("NYSDOL") Investigator's Manual regarding whether or not an establishment that sells food is a "restaurant."  Contrary to the Investigator's Manual and common sense, Plaintiff essentially posits that if all restaurants sell food or beverages, then all establishments that sell food are restaurants.  This is akin to saying, "if all dogs are mammals then all mammals are dogs."

Moreover, if Plaintiff's argument were valid, then the definition of "restaurant" in the HIWO would consist of a single criterion—any entity that sells food has to be a restaurant.  This is undeniably not the case.  Indeed, the plain text of the HIWO's definition makes clear that selling food is just one factor among many to be considered. *See* 12 NYCRR § 146-3.1 (copied ***in full***[2] on page 9 of Walmart's Initial Memorandum).  Consequently, it is not surprising that the NYSDOL, in its Investigator's Manual, identifies several examples of establishments that ***solely*** prepare and offer food for human consumption but are not considered "restaurants."  Based on the text of the HIWO, for an establishment to qualify as a "restaurant" (a) the establishment must

---

[2] Plaintiff asserts that "Wal-Mart has selectively quoted the relevant regulation and has omitted … that the definition of a 'restaurant' in the [HIWO] applies to 'any' entity that sells food or beverage to the public." Opposition at 4. This is simply false.

3

ME1 23404408v.2

be an "eating or drinking place," (b) the establishment must "prepare[] and offer[] food or beverage for human consumption," and (c) the food or beverage must be offered for "consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service." 12 NYCRR § 146-3.1. Plaintiff's interpretation, focusing solely on the phrase "prepares and offers food or beverage for human consumption," is simply wrong and would render the remainder of the definition superfluous and meaningless. *Carcamo-Flores v. Immigration & Naturalization Service*, 805 F.2d 60, 66 (2d Cir. 1986) ("There is a presumption against construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective.")

In contrast to Plaintiff's narrow interpretation, the NYSDOL's interpretation gives full meaning to all parts of the HIWO's definition:

> A food establishment is to be covered under the Restaurant Wage Order if it prepares and offers food to customers for immediate consumption on its premises or in the immediate vicinity; or if it prepares and delivers individual meals or portions of ready-to-eat food by box lunch or catering service. ***A food establishment that does not meet either of these requirements is to be covered under the Miscellaneous Wage Order.***

Investigator's Manual at 380 (emphasis added). The Opposition fails to even address the NYSDOL's interpretation and cites no authority for the adoption of Plaintiff's different interpretation that would lead to absurd results. The NYSDOL's guidance makes sense and reflects the enforcement practices of the agency charged with enforcing the HIWO. Accordingly, the Court should follow the guidance set forth in the Investigator's Manual, which is consistent "with [the] entire regulatory and statutory scheme." *Carvente-Avila v. Chaya Mushkah Rest. Corp.*, 2016 U.S. Dist. LEXIS 75396 at *5 (S.D.N.Y. Mar. 1, 2016). Pursuant to the NYSDOL's interpretation, Walmart's deli department is not a restaurant for the reasons previously set forth in Walmart's Initial Memorandum and herein.

      **C.**    **It Is Undisputed That Walmart Did Not "Provide Facilities For On-Premises Food Consumption" Or "Engage In Catering Either In The Home Or A Place Of Business"**

As discussed in Walmart's Initial Memorandum, the NYSDOL would determine a delicatessen to be a "restaurant" under the HIWO only if it either "provide[s] facilities for on-premises food consumption" or "engage[s] in catering either in the home or a place of business." Investigator's Manual at 381.  Despite his contradictory claim that "any entity that sells food or beverage to the public" is covered by the HIWO (Opposition at 4), Plaintiff ultimately *concedes* that the HIWO "does not transform every retail store that happens to make food into a restaurant." *Id.* at 9.  Plaintiff, however, contends that the Amsterdam Walmart deli department is a restaurant because some customers have decided to bring the food they purchase from Walmart to a "Subway restaurant" that leases space inside the Walmart store.[3] *Id.* at 6.

As a preliminary matter, the very presence of a Subway restaurant inside the store emphasizes the distinction drawn by the NYSDOL between a "German style delicatessen" covered by the Miscellaneous Wage Order and a restaurant covered by the HIWO.  Anyone who has ever eaten at a Subway knows that you can take food out or eat it at tables provided by Subway.  If Walmart's deli was a restaurant in competition with Subway, why would it lease space to a Subway in the same space?  The Subway restaurant is a traditional, counter service restaurant, which "provide[s] facilities for on-premises food consumption." Investigator's Manual at 381.  It offers customers what they cannot get from the Walmart deli.

The fact that the Subway restaurant (not Walmart) allows people who do not buy their food there to eat at their counters/tables is Subway's decision and has no bearing on whether or not Walmart is operating a restaurant.  It is undisputed that Walmart does not "provide facilities

---

[3] It is undisputed that Subway is a tenant of the Amsterdam Walmart store. *See* Deposition of Ryan Dunphy (filed by Plaintiff as Dkt. No. 46-3) at 98:19-23.

for on-premises food consumption." Id. (emphasis added); see Dunphy Initial Dec. at ¶6. Indeed, Plaintiff does not even make this contention.4  He instead argues that Subway provides such facilities. It is undisputed that the seats and tables on which Plaintiff relies belong to Subway. Dunphy Supp. Dec. at ¶ 4.

Similarly, the fact that the Amsterdam Walmart provides a break room in the back of the store for its employees does not transform the deli department into a restaurant. It is undisputed that the break room predates the deli department. *Id.* at ¶2. It is also undisputed that the break room is not furnished by, or part of, the deli department, but rather is furnished by Walmart for the use of all associates. *Id.* at ¶¶ 1-2. Associates are free to eat food in the break room or not and free to eat food purchased from Walmart (whether deli products or otherwise), food brought from home, or food purchased at some other establishment. *Id.* at ¶ 3. The fact that Walmart associates may *choose* to bring food items purchased from Walmart (from the deli or otherwise) to the break room does not transform the deli department into a restaurant. If that were the case, then the NYSDOL's distinction between food establishments covered by the Miscellaneous Wage Order (*e.g.*, "German style delicatessen") and food establishments covered by the HIWO would be meaningless because it is normal for employees in food establishments to eat the food available in their workplace and it is common for employers to provide some type of seating for employees to take breaks. The HIWO simply was not intended to cover retail operations.

With regard to the parking lot outside of Amsterdam Walmart Store, it is undisputed that the parking lot is provided for all Walmart customers whether they select items from the deli department or not. *Id.* at ¶ 6. Indeed, the parking lot serves multiple establishments, not just Walmart. *Id.* at ¶ 5. There are no tables or chairs set up in the parking lot for dining (Id. at ¶ 7),

---

4 The Walmart deli does not even have a "counter" as Plaintiff's lawyer contends without any record support. *Id.*

6

and the fact that customers or employees may choose to eat food items purchased at Walmart (whether from the deli department or otherwise) in their cars in a large parking lot serving multiple establishments does not transform the deli department into a restaurant.

Finally, without addressing any of the arguments in Walmart's Initial Memorandum regarding the NYSDOL's interpretation of "catering," Plaintiff asserts that the deli department provides "catering" services because deli associates prepare sandwich and other platters for pick-up by customers.  According to the NYSDOL, the term "catering" requires the delivery of food to a home or place of business.  Investigator's Manual at 381.  It is undisputed that Walmart did neither. COSF at ¶ 10 ("Walmart associates do not deliver any food to customers, whether on a catering/banquet or box lunch basis").

## POINT II

## PLAINTIFF DID NOT WORK IN THE DELI DEPARTMENT

In contending that Plaintiff should be covered by the HIWO, the Opposition claims that Plaintiff "deliver[ed] food and beverage products to the area in the establishment that prepares and serves food."  Opposition at 5.  This statement is misleading, however, because based on the undisputed facts, what Plaintiff really means is that he "deliver[ed] food and beverage products [that were not used to make the deli department's prepared food items] to the [sales floor outside the deli] area in the establishment that prepares and serves food." COSF at ¶¶ 33, 36.

It is undisputed that Plaintiff was an Unloader at the Amsterdam Walmart who spent "most of his time" unloading "general merchandise" trucks. COSF ¶ 14.  He also spent several hours sorting general merchandise, processing apparel, and stocking merchandise in the warehouse area of the store. *Id.* at ¶¶ 13-21.  Although Plaintiff sometimes unloaded and stocked various packaged retail food products, such as grocery items and packaged meat products (COSF

7

at ¶¶ 33-34), it is undisputed that *none of those items* "were used to make the prepared foods sold by the deli department." *Id.* at ¶ 36.

It is also undisputed that the prepared food items available in the deli department were made from food items delivered by the frozen, dairy, deli truck ("FDD") truck. COSF ¶ 24. Plaintiff testified that he did not unload this truck every day. Biasi Dep. at 108:9-17. When he did unload it, Plaintiff's unequivocal, sworn testimony was that all he did was remove 3 to 10 pallets from the truck and place them in a central cooler in the back of the store (not in the deli department's cooler). See COSF at ¶¶ 26, 28. In response to questioning about the time it took "to get the pallets from the frozen, dairy, deli truck to the cooler," Biasi Dep. at 115:20-25, Plaintiff provided a complete detailed description of his tasks: "Put [the pallets] to the side, close the door down, get someone to sign the – the deliv -- the truck driver's papers, and then after that was done, bring [the pallets] to the coolers, come back." Biasi Dep. at 116:9-13. Plaintiff stated that this process would take "[maybe] just a couple of minutes" when the FDD truck had 3 pallets and "a little longer" if it contained 9, estimating the time as 10 to 15 minutes. Id. at 116:16-20, 117:17-19.

Plaintiff attempts to create an issue of fact by submitting a declaration that vaguely asserts that he spent more time unloading an unidentified "food truck" and delivering unidentified "food" to the "Deli or Bakery *area*." Biasi Declaration at ¶ 4 (emphasis added). At his deposition, however, Plaintiff made it clear that he never went inside the deli area, stocking only the sales floor outside the deli. COSF ¶ 34.[5] For the reasons set forth in Walmart's Motion to Strike, filed herewith, statements in Plaintiff's declaration should be stricken and, in any event, do not controvert his sworn testimony that he never went into the deli department and

---

[5] Plaintiff's testimony is consistent with the Declaration of Cynthia Mecca who attests that the "Deli associates" (not the Unloaders) are "responsible for putting the frozen and fresh food in the appropriate place." Declaration of Cynthia Mecca, ¶ 4.

8

ME1 23404408v.2

never stocked food items used by the deli department.  Accordingly, it cannot be genuinely disputed that even if the deli department were deemed to be a "restaurant," Plaintiff himself had no involvement in its operations.

### POINT III

### THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE WASH AND WEAR EXCEPTION WAS SATISFIED

Plaintiff contends that the wash and wear exception is not satisfied here because he believes the HIWO creates an obligation to provide a number of uniforms "equal" to the number of shifts worked.  As Judge Baxter already determined in *Gregory v. Stewart's Shops*, 2016 U.S. Dist. LEXIS 89576 (N.D.N.Y. 2016) ("*Gregory II*"), that is not what the wash and wear exception requires.  Plaintiff's reliance on the earlier decision in *Gregory v. Stewart's Shops*, 2015 U.S. Dist. LEXIS 24412 (N.D.N.Y Mar. 1, 2015), is misleading because that decision was a denial of a motion to dismiss.  As referenced in Walmart's Initial Memorandum, there was a subsequent decision in the *Gregory* case, which Plaintiff made no attempt to distinguish (or even cite).[6]  In *Gregory II*, decided July 8, 2016, Magistrate Judge Baxter issued a Report-Recommendation and Order in which he interpreted the language at issue.  Judge Baxter addressed the exact same arguments Plaintiff makes in the instant case (Plaintiff's counsel is counsel for the plaintiff in that case as well).  As referenced on page 18 of Walmart's Initial Memorandum, Judge Baxter carefully considered Plaintiff's arguments and ***rejected the contention that the wash and wear exception requires a number of uniforms equal to the number of shifts worked.*** *Gregory II* at 62 ("Plaintiffs cite no authority for their interpretation that subparagraph 4 of this regulation requires an employer to provide a number of wash and wear uniforms *equal* to the number of days per week an employee regularly worked.") (emphasis

---

[6] The unattributed quote on page 9 of the Opposition, however, is a quote from *Gregory II*. *Id.* at 63.

9

in original). Instead, whether the wash and wear exception applies requires a subjective determination based on the undisputed facts of each individual employee's situation. *Id.* at 66 (denying class certification, finding that wash and wear exception would require "subjective determination of 'sufficien[cy]' that would require a mini-hearing on the merits for each employee"). Here, Plaintiff's testimony is unequivocal and would not be affected by any further discovery in this case. He never had an issue washing his uniform and having one ready to wear to work. Under these undeniable admissions, there can be no doubt that the wash and wear exception was satisfied at least with respect to Plaintiff in this case.

## POINT IV

## PLAINTIFF'S CROSS-MOTION TO AMEND SHOULD BE DENIED

Pursuant to Judge Baxter's instructions (*see* Docket Entry No. 35), Walmart has already addressed the arguments in Plaintiff's Cross-Motion to Amend in its Initial Memorandum. *See* Initial Memorandum at 19 (Point V). Plaintiff failed to address Walmart's arguments, particularly with regard to Rule 20, which only permits joinder of persons "in one action as plaintiffs" if their claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). For the reasons set forth in Point V of the Initial Memorandum, allowing Ms. Mecca to join as a plaintiff would violate Rule 20. Thus, Plaintiff's cross-motion to amend should be denied.

## CONCLUSION

For the reasons set forth above and in its Initial Memorandum, Walmart respectfully requests that the Court grant its Motion for Summary Judgment on the Second Cause of Action of Plaintiff's SAC and deny Plaintiff's Cross-Motion to Amend.

Dated:  Hartford, Connecticut
       September 26, 2016

Respectfully submitted,

McCarter & English, LLP

*Attorneys for Defendants*
*Wal-Mart Stores, Inc., Earlene Schaeffer,*
*Ryan Dunphy, and Rebecca Paukstela*

By: */s/ Pamela J. Moore*
    Pamela J. Moore (Bar Roll # 106636)
    Sami Asaad (Bar Roll # 519386)
    CityPlace I
    185 Asylum Street
    Hartford, Connecticut 06103
    Tel.:  (860) 275-6700
    Fax:  (860) 724-3397
    pmoore@mccarter.com
    sasaad@mccarter.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon all counsel of record on this 26th day of September, 2016, by electronic transmission through the Court's ECF system.

/s/ Pamela Moore
Pamela Moore