UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH BIASI, individually and on behalf
of all others similarly situated,

                                  Plaintiffs,                    6:15-CV-0454
                                                      (GTS/ATB)

v.

WAL-MART STORES EAST, LP; EARLENE
SCHAEFFER; RYAN DUNPHY; and
REBECCA PAUKSTELA,

                                  Defendants.
_____

APPEARANCES:                               OF COUNSEL:

E. STEWART JONES HACKER MURPHY, LLP      RYAN M. FINN, ESQ.
  Counsel for Plaintiffs                      DAVID I. IVERSEN, ESQ.
7 Airport Park Boulevard
Latham, NY 12110-0104

McCARTER & ENGLISH, LLP                PAMELA J. MOORE, ESQ.
  Counsel for Defendants                   SAMI ASAAD, ESQ.
185 Asylum Street
CityPlace I
Hartford, CT 06103-3495

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this employment discrimination and uniform maintenance

pay class action filed by Joseph Bilas ("Plaintiff") against Wal-Mart Stores East, LP ("Wal-

Mart"), Earlene Schaeffer, Ryan Dunphy and Rebecca Paukstela (collectively "Defendants"), are

the following three motions: (1) Defendants' motion for partial summary judgment seeking

dismissal of Plaintiff's second cause of action (Dkt. No. 36), (2) Defendants' motion to strike

certain portions of Plaintiff's declarations that were submitted in opposition to their motion for

summary judgment (Dkt. No. 50), and (3) Plaintiff's cross-motion seeking leave of the Court to file and serve a third amended complaint (Dkt. No. 46).  For the reasons set forth below, Defendants' motion for partial summary judgment is granted, their motion to strike is denied, and Plaintiff's cross-motion is denied.

I.     RELEVANT BACKGROUND

A.     Plaintiff's Second Amended Complaint

The allegations relevant to Plaintiff's second cause of action are as follows.  Plaintiff was employed by Wal-Mart as a non-exempt hourly employee for approximately twenty years.  (Dkt. No. 28, ¶ 12 [Pl.'s 2d Am. Compl.].)  As part of his job, Plaintiff was required to wear a vest that displayed a Wal-Mart logo while working in Wal-Mart stores.  (*Id.*, ¶ 48.)  Despite Wal-Mart's requirement that employees wear a uniform while performing their duties, Wal-Mart did not pay to launder or maintain Plaintiff's uniforms.  (*Id.*, ¶¶ 47, 58-59.)  Plaintiff claims that, under 12 NYCRR 146-1.7, Wal-Mart was required to provide him and other similarly situated employees with enough uniforms consistent with the average number of days they worked per week or to compensate them with a "uniform maintenance pay" in order to pay for the maintenance of their uniforms.  (*Id.*, ¶ 49.)  Plaintiff worked five days per week but was given only two vests.  (*Id.*, ¶ 56.)  Plaintiff was informed that Wal-Mart's policy was to give two uniforms to full-time employees and one uniform to part-time employees.  (*Id.*, ¶ 58.)

Based upon the foregoing, Plaintiff seeks to establish a class consisting of all persons who work, or have worked, as a non-exempt employee for Wal-Mart in the State of New York during the past six years.  (*Id.*, ¶ 61.)  Furthermore, Plaintiff seeks on behalf of himself and the individual class members, among other things, damages in the amount of their unpaid minimum wage for uniform maintenance pay.  (*Id.*, ¶¶ 74-77.)

### B.    Statement of Undisputed Material Facts

Although discovery is not complete in this case, Magistrate Judge Baxter gave

Defendants leave to file an early dispositive motion after completion of one deposition.  (Text

Notice dated April 20, 2016; Dkt. No. 35.)  Subsequently, Defendants filed a motion for partial

summary judgment.  Before reciting the material facts of this case, the Court must address an

issue it has identified in Plaintiff's response to Defendants' Statements of Material Facts, made

pursuant to Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.  Specifically, at

various points throughout Plaintiff's Rule 7.1 Response, he "admits" facts asserted by

Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument

in those responses.  In these instances, the Court will treat Defendants' assertions as undisputed.

(*See*, *e.g.*, Dkt. No. 49, ¶¶ 34, 39, 44, 48-49, 53 [Pl.'s Rule 7.1 Response].)  *See CA, Inc. v. New*

*Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the

Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's]

initial response in each instance is, in fact, 'Undisputed'"); *Washington v. City of New York*, 05-

CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement

provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is

'Admit'"); *see also Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that

plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported

denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted

by Defendants, often speaking past Defendants' asserted facts without specifically controverting

those same facts"); *Goldstick v. The Hartford, Inc.*, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19,

2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative

and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts ("Rule 7.1 Statement") and expressly admitted by Plaintiff in his response thereto ("Rule 7.1 Response"). (*Compare* Dkt. No. 38 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 49 [Pl.'s Rule 7.1 Response].)

1.     The Amsterdam Wal-Mart store is one of Wal-Mart's "Supercenters," meaning it has a wide variety of departments, including both general merchandise and groceries.

2.     The store also includes a deli department that sells a wide variety of packaged items on a retail basis as well as some prepared foods.[1]

3.     The prepared food sold by deli department associates (employees) is sold exclusively on a retail, take-out basis.[2]

4.     The deli department does not offer table service, counter service, or curb service of any kind, and there are no tables or counters at which customers can sit and eat a meal within

---

[1]     (*Compare* Dkt. No. 38, ¶ 2 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 2 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact. Specifically, the cited record evidence does not state that the Deli Department employees serve "ready to eat" food ].)

[2]     (*Compare* Dkt. No. 38, ¶ 3 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 3 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact. Specifically, whether employees or customers purchase food from the deli department and then consume it somewhere else on Wal-Mart's premises does not sufficiently refute whether the prepared food is sold on a "take-out basis." Indeed, Plaintiff alleged in his first Amended Complaint that the deli items are sold "to-go."].)

the immediate vicinity of the deli department.[3]

5.      The deli department does not have a soda fountain.

6.      The deli department does not take payment from customers.

7.      Customers must take all prepared food (and any other deli items) to the check-out lanes like all other store merchandise.

8.      Wal-Mart associates do not deliver any food to customers, whether on a catering/banquet or boxed lunch basis.

9.      Deli department associates do not serve customers at a table or clean up after them.

10.     Plaintiff worked in the Amsterdam Wal-Mart as an "Unloader."

11.     As an Unloader, "a good majority" of his time was spent in the receiving area.

12.     Plaintiff testified at his deposition that most of his time was spent unloading "general merchandise" trucks.

13.     Plaintiff described general merchandise as follows:

> [a]nything that's, like, stock pallets, mixed in: Water, bicycles, electronic products.  Anything that's stocked throughout the store on a shelf would be considered general merchandise that wasn't frozen, dairy, or food.  Regular merchandise we stocked on the shelf.  That's what came on the GM truck.

14.     Another daily task Plaintiff had to perform was sorting merchandise that arrived mixed together into cardboard boxes called "break packs."

_____

[3]     (*Compare* Dkt. No. 38, ¶ 4 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 4 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact.].)

15. Break packs were sorted in the "One Touch Area."

16. Plaintiff testified at his deposition that he spent "an hour and a half" to "three hours" every day working on break packs.

17. Additionally, Plaintiff was routinely tasked with processing apparel.

18. Plaintiff testified at his deposition that processing apparel involved the following procedures:

> We had to take it out of the plastic.  It was–some of it was on hangars.  Some of it we had to put on hangers ourself, whatever.  We had to put on the hangers on the respective rack for which they wanted.  Like, the infants', boys', and girls' went on one.  Men's was on one side.  Women's was on another, and there was a blue rack for regular apparel, and there was a red rack for what Wal-Mart called star freight where–if it was like, say, a special season, occasion, a holiday, and it was certain clothing set aside to sell from for different things.

19. Plaintiff also was responsible for "binning," which refers to stocking "overstock" merchandise in the warehouse area.

20. Plaintiff also unloaded other trucks such as the "remix" trucks as well as meat and product trucks.

21. According to Plaintiff, there was one truck that came into the store called the "frozen, dairy, deli" ("FDD") truck that contained some items to be stocked in the deli department.  This truck included things like "frozen foods" "bakery stuff," "dairy products, like milk, juice, yogurt, cheeses, cottage cheese," and "Deli [products] . . . like, steaks, sausage, hot dogs, [and] meats."

22. According to Plaintiff, the FDD truck was the only truck that brought food products sold by the deli department.

-6-

23.    Items on the FDD truck were "all mixed together" on pallets.

23.    The FDD truck contained between 3-10 pallets.

24.    When the FDD truck arrived, one of the Unloaders would unload the pallets using a pallet jack, and then return to their prior duties.

25.    The pallets were placed into a central cooler/freezer outside of the deli department.

26.    The deli department had its own cooler/freezer that Plaintiff never entered.

27.    Plaintiff estimated that it took from a "couple of minutes" to "10 to 15 minutes" to unload the FDD truck.[4]

28.    Although there was a delivery from the FDD truck on a daily basis, Plaintiff was not always assigned to unload it.

29.    Once the pallets were unloaded and placed in the central cooler/freezer, deli department associates would retrieve merchandise for the deli department from the cooler/freezer and bring it to stock in the deli department.

30.    As an Unloader, one of Plaintiff's tasks was stocking merchandise on the sales floor, which entailed stocking "general merchandise," including grocery items, in various departments outside of the deli.

31.    The closest Plaintiff ever got to the deli was stocking the sales floor "outside" the deli "where customers can pick from and buy from."

---

[4]    (*Compare* Dkt. No. 38, ¶ 30 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 30 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact. Specifically, Plaintiff admits that he testified that it took 10-15 minutes to unload the FDD truck but that the process of organizing and delivering the pallets took in excess of an hour. However, the asserted fact only discusses the length of time it took to unload the truck, not organize and deliver the pallets.].)

32.     The items Plaintiff stocked were packaged items like packaged hot dogs and hams.

33.     Neither these items nor any of the general merchandise or grocery items were used to make the prepared foods sold by the deli department.

34.     Plaintiff never worked as a deli associate.

35.     Plaintiff did not "even know anyone who worked in the deli."

36.     Plaintiff's interaction with the deli was limited to saying "hello,' walk[ing] by, and that was all."

37.     Before September 2014, Wal-Mart's dress code required Unloaders to wear a clean blue shirt and either jeans or khakis.

38.     Plaintiff testified at his deposition that he "wore a different clean pair [of pants] every single day," and "wore a different [shirt] every day that was clean."

39.     Plaintiff testified that he would "bring [his clothes] home, wash them, and when they're clean, wear them back to work again."

40.     Beginning on September 29, 2014, Wal-Mart added a vest to the dress code.

41.     On September 27, 2014, Wal-Mart published an updated dress code policy for New York associates on the WIRE.

42.     The WIRE is a computerized repository of all of Wal-Mart's policies that are applicable to associates and to which associates have open access.

43.     The new dress code policy was posted "on the wall outside personnel."[5]

_____

[5]     (*Compare* Dkt. No. 38, ¶ 46 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 46 [Pl.'s Rule 7.1 Response, denying above-stated fact and relying on Plaintiff's declaration that contradicts his prior deposition testimony. Specifically, Plaintiff testified that he saw portions of the policy outside of "personnel," just not the last page which discussed "wash and wear items." (Dkt. No.

44.     Plaintiff remembers seeing certain portions of the new dress code policy "[p]robably more than once."[6]

45.     The new dress code policy (applicable to New York employees) noted that the vest was a wash and wear item, but stated that "wash and wear items" such as the vest would be laundered for associates "at the company's expense."

46.     Plaintiff testified that both his wife and father, who are employed at the Amsterdam Wal-Mart, regularly leave their vests at the store and are furnished with a fresh vest for their next shift.

47.     Plaintiff was initially issued two vests to cover his five shifts at Wal-Mart's expense.

48.     Plaintiff testified at his deposition that if he tore or ripped his vest, or if something else happened to it, he would simply ask for another one and one would be provided.

49.     The Amsterdam Wal-Mart has a room stocked with numerous vests available in

_____

39, Attach. 1, at 174:16-23).  In an attempt to dispute this fact, Plaintiff relies on his declaration, which states that the uniform policy that was posted "did not state that Wal-Mart would wash our vests for us[.]" (Dkt. No. 46, Attach. 4, ¶ 9).  However, it is clear from Plaintiff's deposition testimony that he did not review the entire policy that was posted but he still recognized it as the same one that was posted outside of personnel.  (Dkt. No. 39, Attach. 1, at 172:8-174:23)].)  *See Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("To the extent that Raskin's earlier deposition testimony is at odds with his declaration, we follow the rule that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (internal quotation marks omitted).

    [6]     (*Compare* Dkt. No. 38, ¶ 47 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 47 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact.].)

all different sizes.[7]

50.      Plaintiff understood that the vests were machine washable and testified at his

deposition that he would throw his vests into the wash with the rest of his laundry "maybe every

couple of days."

51.      Plaintiff never complained about having to wash his vest because, as he testified

at his deposition, he "never had a reason to."

## II.      THE PARTIES' BRIEFINGS ON THEIR RESPECTIVE MOTIONS

### A.      Defendants' Motion for Partial Summary Judgment

#### 1.      Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert three arguments.  (Dkt. No. 37

[Defs.' Mem. of Law].)

First, Defendants argue that, in order for Plaintiff's second cause of action to be

actionable, the Court must find that New York's Hospitality Industry Wage Order ("HIWO"), 12

N.Y.C.R.R. § 146-3.1, applies to Plaintiff as well as to all others in the class he seeks to

represent.  (*Id.* at 12.)[8]  In order to reach this conclusion, Defendants argue that the Court must

find that (a) the deli department in the Amsterdam Wal-Mart store is a "restaurant," as defined in

the HIWO, and (b) that Plaintiff worked in the deli department.  (*Id.*)  The HIWO defines

restaurant as follows:

_____

[7]       (*Compare* Dkt. No. 38, ¶ 52 [Defs.' Rule 7.1 Statement, asserting above-stated
fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 52 [Pl.'s Rule
7.1 Response, denying above-stated fact but failing to cite record evidence supporting denial of
above-stated fact.].)

[8]       Page citations refer to the page numbers used on CM/ECF rather than the actual
page numbers contained in the parties' respective motion papers.

> The term restaurant includes any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, *and* services in connection therewith or incidental thereto. The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants.

12 N.Y.C.R.R. § 146-3.1 (emphasis added).  Defendants argue that Plaintiff's claim fails because Wal-Mart did not provide any "services in connection" with the offer of food or beverages for human consumption.  (Dkt. No. 37, at 13 [Defs.' Mem. of Law].)  Specifically, Defendants argue that food was sold for take-out only by the deli department in the Amsterdam store and that there were no tables, counters, waiters/waitresses, busboys, or anything similar in the department.  (*Id.*)

Furthermore, because the word "and" is used in the HIWO's definition, Defendants argue that it is conjunctive and, therefore, both requirements must be met.  (*Id.*)  In this regard, Defendants argue that the determination of whether the deli department is a "restaurant" should be guided by the New York State Department of Labor's 2014 Labor Standards' Field Investigator's Manual.  (*Id.* at 13-14.)  Defendants argue that, according to the Investigator's Manual, the HIWO does not apply to a prepared food section within a larger retail store and, even if it did, it certainly would not apply to the department in question.  (*Id.* at 14.)  Specifically, Defendants argue that the Investigator's Manual provides the following guidance in determining whether to apply the Restaurant[9] or the Miscellaneous Wage Order:

---

[9]     The Wage Order for the Restaurant Industry is codified at 12 N.Y.C.R.R. § 137-3.1.  Defendants argue that the definition of "restaurant" in the Restaurant Wage Order is essentially identical to the definition provided in the HIWO.  (Dkt. No. 37, at 12-13 [Defs.' Mem. of Law].) *See also* Notice of Adoption: Hotel and Restaurant Wage Orders, 2010 N.Y. Reg. Text. 239012 ("The proposed new rule will combine the wage orders for the restaurant and hotel industries [12 NYCRR 137 and 138] into a single new Minimum Wage Order for the Hospitality Industry [12 NYCRR 146].") (eff. date Jan. 1, 2011) (N.Y. Dep't of Labor).

> There are a number of situations where the Investigator may not be sure whether a food establishment is to be covered by the Restaurant or by the Miscellaneous Wage Order.  A food establishment is to be covered under the Restaurant Wage Order if it prepares and offers food to customers for immediate consumption on its premises or in the immediate vicinity; or if it prepares and delivers individual meals or portions of ready-to-eat food by box lunch or catering service.  *A food establishment that does not meet either of these requirements is to be covered under the Miscellaneous Wage Order.*

(*Id.* at 14.)

With regard to delis in particular, Defendants argue that the Investigator's Manual delineates two specific kinds of delis, the "German Style Delicatessen" and the "Jewish Style Delicatessen."  (*Id.* at 15.)  According to the Investigator's Manual, the German Style Delicatessen is a "type of establishment [that] is essentially retail" to which the Miscellaneous Order applies.  (*Id.*)  Even if "the establishment makes and delivers sandwiches," only the employee "who is engaged in delivery work" would be classified as a restaurant employee and the Miscellaneous Order would apply to the other delicatessen employees.  (*Id.*)  By contrast, most Jewish Style Delicatessens "provide facilities for on-premises food consumption" or "engage in catering either in the home or a place of business" and, therefore, are considered restaurants as defined by the wage orders.  (*Id.* at 15-16.)

Defendants argue that the deli department in the Amsterdam Wal-Mart store is more akin to the German Style Delicatessen and that Plaintiff has failed to allege, and/or create a genuine dispute of fact regarding, whether the deli department (a) provides facilities for on-premises food consumption, (b) delivers any food, or (c) provides services such as table service, counter service, wait service, or busboys.  (*Id.* at 16.)  Although Plaintiff alleges that the deli "engages in catering services" by providing "sandwich trays" and other platters, Defendants argue that the

preparation of platters solely for customer pick-up does not constitute "catering" under the HIWO. (*Id.* at 17.)  More specifically, under the Investigator's Manual, Defendants argue that the term "catering" consists of delivering food to a "home or place of business." (*Id.*) Defendants argue that the undisputed evidence establishes that none of the deli associates delivered any food to customers' homes or businesses. (*Id.*)

Second, Defendants argue that, even if the deli department is found to contain a "restaurant operation," summary judgment is still warranted because Plaintiff admitted that he had no involvement in such an operation. (*Id.* at 19.)  Specifically, Plaintiff testified at his deposition as follows: (a) he was never employed as a deli associate; (b) the only position that he held during the relevant time period was that of an Unloader; (c) as an Unloader, he spent most of his time unloading the general merchandise trucks, spending the remainder of his time sorting general merchandise that arrived in "break packs," processing apparel, stocking general merchandise (including dry grocery items) and binning overstock in the receiving area; (d) when he unloaded the FDD truck, he would place the products in a centralized cooler/freezer in the warehouse area where someone else from the deli department would retrieve them and bring them back to the deli; and (e) the closest Plaintiff ever got to the deli was stocking the sales floor "outside" the deli "where customers can pick from and buy from," and neither these items nor any of the general merchandise or grocery items were used to make the prepared foods sold by the deli department. (*Id.* at 19-20.)

Third, and finally, Defendants argue that, in any event, neither Plaintiff nor anyone else in the proposed class is owed uniform maintenance pay because the HIWO's "wash and wear" exception applies to the Wal-Mart vest at issue in this case. (*Id.* at 21.)  The "wash and wear" exception states as follows:

> An employer will not be required to pay the uniform maintenance pay, where required uniforms
>
> (1) are made of "wash and wear" materials;
>
> (2) may be routinely washed and dried with other personal garments;
>
> (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and
>
> (4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee.

12 N.Y.C.R.R. § 146-1.7(b).

With respect to the first three factors, Defendants argue that Plaintiff testified at his deposition that he routinely washed his vest at home in his washing machine with other clothing every few days without special treatment.  (Dkt. No. 37, at 22 [Defs.' Mem. of Law].) Regarding the fourth factor, Defendants argue that Plaintiff's allegation that Wal-Mart was required to supply a number of vests equal to the number of days worked is an overly broad interpretation of the HIWO.  (*Id.*)  Specifically, Defendants argue that, when the HIWO was being drafted, the New York State Department of Labor ("NYSDOL") used the word "equals" in reference to tip credits in § 146-1.3, but used the words "sufficient" and "consistent with" in reference to the wash and wear exception.  (*Id.*)  Defendants argue that the canons of construction dictate that, when a drafter uses a specific word in one section and a different word in another, it is presumed that the word choice is intentional.  (*Id.*)  Accordingly, Defendants argue that Magistrate Judge Baxter correctly rejected Plaintiff's interpretation of this factor in *Gregory v. Stewart's Shops Corp.*, 14-CV-0033, 2016 WL 8290648, at *17 (N.D.N.Y. July 8,

2016), holding instead that, "[g]iven that the authors of the Hospitality Wage Order, if they so intended, could have drafted a bright-line standard such as that suggested by plaintiffs, the court concludes that it must apply the more subjective language of § 146-1.7(b)(4), as written." (*Id.* at 22-23.)

Applying the more subjective language of § 146-1.7(b)(4) in the present case, Defendants argue that Plaintiff's deposition testimony establishes that he received a "sufficient number of uniforms, consistent with the average number of days per week worked." (*Id.* at 23.) Defendants argue that Plaintiff was issued two vests; however, when he needed another vest, Wal-Mart provided one. (*Id.*) Defendants reiterate the fact that Plaintiff routinely laundered his personal garments and that he washed his vests with his other laundry. (*Id.*) Finally, Defendants argue that Plaintiff testified that he "never had a reason" to complain about washing his vest at home. (*Id.*)

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff makes the following five arguments in opposition to Defendants' motion for summary judgment. (Dkt. No. 46, Attach. 8 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that the HIWO applies to employees other than those who sell or serve food. (*Id.* at 4-5.) Plaintiff cites the HIWO's Regulatory Impact Statement, which states that "desk clerks, cleaning workers, maintenance & ground workers, porters, janitors, and others" also receive protection under the HIWO. (*Id.* at 5.) Furthermore, Plaintiff argues that, under 12 N.Y.C.R.R. § 146-3.3(a), there are three categories of employees protected by the HIWO: "food service workers," "service workers," and "non-service workers." (*Id.*) Plaintiff argues that he is a non-service worker because he delivers food and beverage products to the area in the establishment that prepares and serves food and he does not receive tips. (*Id.*)

Second, Plaintiff argues that Defendants have selectively quoted 12 NYCRR § 146-3.1(b) in support of their argument that Wal-Mart is not a restaurant. (*Id.*) Plaintiff notes that the definition of a restaurant applies to "any" entity that sells food or beverage to the public. (*Id.*) In addition, Plaintiff cites 12 NYCRR § 146-3.1, which states that hospitality industry excludes only the following:

> (1) establishments where the service of food or beverage or the provision of lodging is not available to the public or to members or guests of members, but is incidental to instruction, medical care, religious observance, or the care of persons with disabilities or those who are impoverished or other public charges; and

> (2) establishments where the service of food or beverage or the provision of lodging is offered by any corporation, unincorporated association, community chest, fund or foundation organized exclusively for religious, charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

(*Id.*) Plaintiff argues that these exclusions demonstrate the breadth of the HIWO. (*Id.* at 6.) Accordingly, because Wal-Mart sells food and beverage for human consumption both onsite and through its catering services, Plaintiff argues that it is a restaurant under the HIWO's definition. (*Id.*) To the extent that Defendants disagree and offer their own set of facts to dispute this conclusion, Plaintiff argues that this presents a genuine dispute of fact and more discovery is needed to address the factual arguments raised by Defendants. (*Id.*)

Third, Plaintiff argues that he has alleged facts plausibly suggesting that Wal-Mart is a restaurant for purposes of the HIWO in his proposed third amended complaint. (*Id.*) Specifically, the proposed third amended complaint alleges that Wal-Mart offers the following services: (a) it prepares and offers food or beverages for human consumption; (b) it engages in catering services, "for every occasion," pursuant to which it provides, among other things,

sandwich trays, sliders trays, sub sandwiches of two, four, and six feet, shrimp cocktail trays and hot food trays; and (c) it provides a counter service where customer/employees can pick from multitudes of hot and cold food items, including, but not limited to, rotisserie chicken, fried chicken, chicken wings, macaroni and cheese, mashed potatoes, potato salads, and macaroni salads.  (*Id.* at 6-7.)  The proposed third amended complaint further alleges that Wal-Mart will weigh and package food orders in ready to eat "to-go" containers.  (*Id.* at 7.)

Fourth, Plaintiff argues that Defendants' interpretation of the HIWO invites speculation, such as (1) how much food an establishment needs to sell before it is considered part of the hospitality industry and (2) what factors the Court should weigh to determine which establishments are covered.  (*Id.*)  Plaintiff argues that Defendants do not offer an answer to these questions but, instead, conclude that Wal-Mart is not a restaurant because it is a retailer. (*Id.*)  In addition, Plaintiff argues that Defendants' analogy to a Jewish Delicatessen is irrelevant because the deli department does serve food which is routinely consumed on Wal-Mart's premises, including in break rooms, in the Subway restaurant located inside the Amsterdam Wal-Mart, as well as in the parking lot.  (*Id.*)

Fifth, and finally, Plaintiff argues that Defendants are liable for uniform maintenance pay because Wal-Mart did not notify its employees individually, and in writing, about the availability of its laundry service.  (*Id.* at 9.)  Similarly, Plaintiff argues that Defendants cannot rely on the "wash and wear" exception because Plaintiff was provided two vests even though he regularly worked five or more days per week.  (*Id.*)  Because Wal-Mart requires its employees to wear a clean and neat uniform to work each shift, Plaintiff argues that it has not given him a sufficient number of uniforms to meet this requirement.  (*Id.* at 9-10.)  Therefore, Plaintiff argues that an

employer must provide a clean uniform for each shift or, at a minimum, provide a sufficient number of uniforms equal to or greater to the number of shifts scheduled each week.  (*Id.* at 11.)

### 3.     Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert five arguments.  (Dkt. No. 47 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff's contention that he has plead a plausible claim is insufficient to defeat summary judgment because he must set forth specific facts demonstrating that there is a genuine issue for trial and cannot rely on the standard governing motions to dismiss for failure to state a claim.  (*Id.* at 5-6.)

Second, Defendants argue that Plaintiff ignores the text of the HIWO and the guidance provided by the NYSDOL when he argues that the HIWO "applies to *any entity* that sells food or beverage to the public." (*Id.* at 6.)  Specifically, Defendants argue that Plaintiff's position essentially posits that, if all restaurants sell food and beverages, then all establishments that sell food and beverages are restaurants.  (*Id.*)  Moreover, if Plaintiff's argument were valid, Defendants argue, then the definition of "restaurant" in the HIWO would consist of a single criterion–any entity that sells food has to be a restaurant.  (*Id.*)  Defendants argue that this is not the case, which is why the NYSDOL provides several examples in its Investigator's Manual of establishments that solely prepare and offer food for human consumption but are not considered "restaurants." (*Id.*)  Defendants further argue that Plaintiff's interpretation, which focuses solely on the phrase "prepares and offers food or beverage for human consumption," would render the remainder of the definition superfluous and meaningless.  (*Id.* at 7.)

Third, Defendants argue that it is undisputed that the Amsterdam Wal-Mart does not provide facilities for on-premises food consumption for the following seven reasons: (1) the Subway restaurant located within the Amsterdam Wal-Mart is a tenant; (2) whether Subway allows people who do not buy their food there to nonetheless eat at their counters/tables is Subway's decision and it has no bearing on whether or not Wal-Mart is operating a restaurant; (3) the seats and tables on which Plaintiff relies belong to Subway and not to Wal-Mart; (4) the fact that Wal-Mart provides a break room for its employees, and that they can choose to bring food items there purchased from Wal-Mart or elsewhere, does not transform the deli department into a restaurant; (5) the parking lot outside of Wal-Mart serves multiple establishments and is provided to customers whether they purchase food from Wal-Mart's deli department or not; (6) there are no tables or chairs set up in the parking lot for dining; and (7) the fact that customers or employees may choose to eat food items purchased from Wal-Mart in their cars does not transform the deli department into a restaurant.  (*Id.* at 8-10.)  In addition, Defendants reiterate their argument that the deli department associates do not deliver any food to customers, whether on a catering/banquet or box lunch basis and, therefore, its services do not fall under the NYSDOL's interpretation of "catering." (*Id.* at 10.)

Fourth, Defendants reiterate their argument that Plaintiff did not work in the deli department and that, at most, he delivered prepared food items from the FDD truck to a central cooler in the back of the Wal-Mart, which was not the deli department's cooler, where deli department associates could take items that they needed back to the deli department.  (*Id.* at 10-11.)  Defendants further argue that Plaintiff's attempt to create a genuine dispute of fact regarding this issue by filing a declaration stating that he delivered unidentified food to the "Deli

or Bakery area" should be disregarded because Plaintiff testified at his deposition that he never went inside the deli area.  (*Id.*)

Fifth, and finally, Defendants argue that Plaintiff's contention that the HIWO obligates Wal-Mart to provide a number of uniforms "equal" to the number of shifts worked is not in accordance with Magistrate Judge Baxter's ruling in *Gregory*.  (*Id.* at 12.)  Defendants argue that Plaintiff made no attempt to distinguish, or even cite, *Gregory* in his opposition memorandum of law and point out that Plaintiff's counsel also represented the plaintiff in *Gregory*, where Magistrate Judge Baxter addressed the same exact arguments that Plaintiff now makes.  (*Id.*) Defendants reiterate their argument that, in accordance with Magistrate Judge Baxter's ruling, in order to determine whether the wash and wear exception applies requires a subjective determination based on the undisputed facts of each individual employee's situation.  (*Id.* at 13.) In the present case, Defendants argue that Plaintiff's deposition testimony is unequivocal that he did not have an issue washing his uniform and having one ready to wear to work and, therefore, the wash and wear exception was satisfied.  (*Id.*)

### B.    Plaintiff's Cross-Motion for Leave to Serve a Third Amended Complaint

#### 1.    Plaintiff's Memorandum of Law

Generally, in his memorandum of law, Plaintiff argues that Defendants will not be prejudiced if the Court were to grant his cross-motion because they were notified of his intention to amend his Second Amended Complaint before any depositions were taken.  (Dkt. No. 46, Attach. 8, at 4 [Pl.'s Mem. of Law].)  In addition, Plaintiff argues that the parties have performed very limited discovery and the theory he has pursued as it relates to his second cause of action has not changed throughout this litigation.  (*Id.*)

### 2.     Defendants' Opposition Memorandum of Law[10]

Generally, in opposition to Plaintiff's cross-motion, Defendants argue that, should the

Court agree with their arguments that the HIWO does not apply to the deli department or that the

wash and wear exception precludes a claim for uniform maintenance pay, Plaintiff's attempt to

add Cynthia Mecca as a proposed plaintiff would be futile.  (Dkt. No. 37, at 24 [Defs.' Mem. of

Law].)  However, Defendants argue that, if the Court disagrees with these arguments but,

instead, finds that Plaintiff was not covered by the HIWO, joinder of Plaintiff's remaining cause

of action with Ms. Mecca's proposed cause of action would be improper under Fed. R. Civ. P.

20.  (*Id.*)  This is because Plaintiff's remaining claim for individual discrimination and/or

harassment arise out of his own interactions with his supervisor, Defendant Earlene Schaffer,

and has nothing to do with claims for uniform maintenance pay on behalf of deli associates.  (*Id.*)

### C.     Defendants' Motion to Strike Portions of Declarations Filed by Plaintiff

### 1.     Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert four arguments.  (Dkt. No. 50,

Attach. 1 [Defs.' Mem. of Law].)

First, Defendants argue that paragraphs 3, 4, and 6 in Plaintiff's declaration (Dkt. No. 46,

Attach. 4) should be stricken as irrelevant, immaterial, and made in bad faith in violation of Fed.

R. Civ. P. 56(h) because those paragraphs contradict (a) Plaintiff's prior deposition testimony,

and (b) his admissions made in response to Defendants' Statement of Material Facts.  (*Id.* at 4.)

---

[10]     Pursuant to Magistrate Judge Baxter's instructions, Defendants addressed the arguments in Plaintiff's cross-motion in its initial memorandum of law after receiving a copy of Plaintiff's proposed amended complaint.  (Dkt. No. 35.)  Therefore, Defendants' arguments in opposition to Plaintiff's cross-motion are contained in its memorandum of law and not in an opposition memorandum of law.

Second, Defendants argue that paragraph 3 of Sheila Biasi' declaration (Dkt. No. 46, Attach. 5) should be stricken because it sets forth Ms. Biasi's "beliefs" regarding other employees' observations, which are not based upon personal knowledge.  (*Id.* at 5.)  In addition, Defendants argue that paragraph 4 of Ms. Biasi's declaration should be stricken because her assertion that the cost of laundering a vest at home is "substantial" is lacking in foundation, is speculative, and unsupported by admissible record evidence.  (*Id.*)

Third, Defendants argue that paragraph 15 of Cynthia Mecca's declaration (Dkt. No. 46, Attach. 6) should be stricken because her assertion that "Wal-Mart does not provide a service to launder [the blue vest]" directly contradicts Plaintiff's deposition testimony and the declaration of Ms. Biasi, is unsupported by admissible record evidence, and is nothing more than an attempt to create a genuine dispute of material fact when none exists.  (*Id.* at 5.)

Fourth, and finally, Defendants argue that paragraph 5 of Plaintiff's counsel's declaration (Dkt. No. 46, Attach. 1) should be stricken because it constitutes improper legal argument.  (*Id.* at 6.)

### 2.    **Plaintiff's Opposition Memorandum of Law**

Generally, Plaintiff makes the following two arguments in opposition to Defendants' motion to strike.  (Dkt. No. 52 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendants' motion is unnecessary and should be denied because, in adjudicating a motion for summary judgment, the Court will already be tasked with determining which facts it may properly consider.  (*Id.* at 5-6.)

Second, Plaintiff argues that the challenged portions of the subject declarations should be deemed admissible and material because they are (a) relevant to whether the deli department

-22-

meets the definition of a restaurant under the HIWO and they do not mischaracterize the record, and (b) material to issues concerning the availability of laundry service provided by Wal-Mart and whether Wal-Mart adequately notified its employees about this service.  (*Id.* at 6-11.)  In addition, Plaintiff argues that he did not contradict his deposition testimony but instead elaborates upon it.  (*Id.* at 8-9.)   Finally, Plaintiff argues that the portion of his counsel's declaration that has been challenged by Defendants merely recites his request for relief and does not seek to introduce inadmissible evidence or contain unsubstantiated factual allegations.  (*Id.* at 13.)

## III.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[11]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.

---

[11]       As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[12]  Of course, when a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has failed to properly respond to that

---

[12]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

statement,[13]

Similarly, in this District, where a non-movant has failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[14]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . .");  *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standard Governing a Motion for Leave to Amend

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2);

---

[13]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[14]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127,

1133 (2d Cir. 1993).  Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be

freely given in the absence of any apparent or declared reason to not grant leave to amend, such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, or futility of the amendment.  *See Foman*, 371 U.S. at 182; *S.S.*

*Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer*

*v. First Franklin Loan Servs, Inc*., 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19,

2010); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

 "An amendment to a pleading is futile if the proposed claim could not withstand a motion

to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329,

333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir.

2002]).  Therefore a proposed amendment is not futile if it states a claim upon which relief can

be granted.  *See Annunziato*, 293 F.R.D. at 333 (citations omitted).  As the Second Circuit has

explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir.1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL

599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend

where it appears that amendment would prove to be unproductive or futile.") (citation omitted);

*see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where

amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The

problem with Cuoco's causes of action is substantive; better pleading will not cure it.

Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation

omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course,

where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be

dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810

(2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend

should be denied").[15]

## IV.   ANALYSIS

### A.   Whether Certain Portions of the Declarations Filed by Plaintiff Should Be Stricken from the Record

After carefully considering the matter, the Court answers this question in the negative

because the relief requested in Defendants' motion is unnecessary.  In identifying the undisputed

material facts for purposes of Defendants' motion for summary judgment, the Court has carefully

considered and decided the issues raised by Defendants in their motion to strike.  *See Nick's*

*Garage, Inc. v. Progressive Cas. Ins. Co.*, 2015 WL 1481683, at *5 (N.D.N.Y. Mar. 31, 2015)

(D'Agostino, J.) ("The Court will consider only evidence shown to be admissible at trial.  Parties

should assume that courts will undertake this obligation faithfully and fully review the proffered

---

[15]     The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  Thus, this standard does not appear to be an accurate recitation of the governing law.

evidence of record and draw appropriate conclusions. . . . Therefore, the Court denies

Defendant's motions to strike.") (internal quotation marks and citation omitted).  Therefore,

Defendants' motion to strike is denied.

> **B.     Whether Plaintiff's Second Cause of Action Should Be Dismissed as a Matter of Law**

After carefully considering the matter, the Court answers this question in the affirmative

because (1) the deli department within the Amsterdam Wal-Mart does not meet the criteria of a

"restaurant," as defined by the HIWO, and (2) Plaintiff has failed to create a genuine dispute of

material fact regarding whether he is an employee under the HIWO, for the reasons stated by

Defendants in their memoranda of law.  (Dkt. No. 37, at 12-21 [Defs.' Mem. of Law]; Dkt. No.

47, at 4-10 [Defs.' Reply Mem. of Law].).  To those reasons, the Court adds the following

analysis.

> **1.     Whether the Deli Department Meets the Criteria of a "Restaurant" as Defined by the HIWO**

The Court finds that the undisputed facts establish that the deli department is a "eating or

drinking place that prepares and offers food or beverage for human consumption." 12

N.Y.C.R.R. § 146-3.1(b).  However, to meet the HIWO's definition of a "restaurant," the deli

department must also offer food for human consumption "*either* on any of its premises *or* by

such service as catering, banquet, box lunch, curb service or counter service to the public, to

employees, or to members or guests of members, *and services in connection therewith or*

*incidental thereto*." *Id.* (emphasis added).  The Court finds that Plaintiff has failed to create a

genuine dispute of material fact regarding this latter requirement (i.e., whether the deli

department offers food for consumption either on its premises or by such service such as

catering, etc.).

As an initial matter, Defendants argue that, in determining whether the HIWO's definition applies to the deli department, the Court may rely on the NYSDOL's Investigator's Manual.  (Dkt. No. 37, at 17-18 [Defs.' Mem. of Law].)  The Court may do so if it finds that the HIWO's language is sufficiently ambiguous.  *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 509-10 (2d Cir. 2017).  The Court finds that the HIWO's reference to an establishment's "premises" is sufficiently ambiguous, especially when attempting to define a food establishment's "premises" within a larger department store, such as in the present case.  The Court also finds the HIWO's references to "services in connection therewith or incidental thereto" and services such as "catering" are ambiguous because these references do not specify what services qualify.  For example, does this mean wait service, busboys, etc., must be provided?  Also, does "catering" require that the food be delivered?

However, because the Investigator's Manual appears to be an internal agency document that is intended only for assisting NYSDOL personnel in conducting investigations, and is not intended as an official interpretation of law (Dkt. No. 39, Attach. 4, at 4), it is not entitled to the same level of deference that other official agency interpretations would be accorded under *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837 (1984).[16]  *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (stating that "[i]nterpretations contained in policy statements, agency manuals, and enforcement guidelines . . . lack the force of law" and do not warrant *Chevron* deference).  Nonetheless, an "informal agency interpretation that is neither a formal adjudication nor a promulgated rule may still receive deference under *Skidmore v. Swift*

---

[16]    The Court notes that the parties have not submitted evidence from the NYSDOL in the form of official publications or interpretations that would automatically be given a greater level of deference.

& Co., 323 U.S. 134 (1944)."  *Buffalo Transp., Inc. v. United States*, 855 F.3d 381, 385 (2d Cir.

2016).  "Such informal agency guidance receives deference according to its persuasiveness, as

evidenced by the thoroughness evident in [the agency's] consideration, the validity of its

reasoning, its consistency with earlier and later pronouncements, and all those factors which give

it power to persuade." *Buffalo Transp*, 855 F.3d at 385 (internal quotation marks omitted).  The

Court finds the relevant portions of the Investigator's Manual (Dkt. No. 39, Attach. 4, at 20-22)

to be persuasive in that it offers several guidelines and examples that are consistent with one

another, as well as with the HIWO's statutory scheme and its unambiguous language, to better

explain how the definition of "restaurant" should be interpreted.  *See McCormick ex rel.*

*McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 293, n.14 (2d Cir. 2004) ("The

Investigator's Manual is an internal agency document designed to aid in agency investigations of

intercollegiate and interscholastic athletic programs. . . . We rely on it here to the extent that it

provides a persuasive explanation of the Policy Interpretation."); *Biediger v. Quinnipiac Univ.*,

928 F. Supp. 2d 414, 447 (D. Conn. 2013) (stating that a Title IX Athletics Investigator's

Manual "is not entitled to the same level of deference accorded the regulations, the 1979 Policy

Interpretation, or even the OCR policy letters, but instead is merely 'entitled to respect' to the

extent that it has the power to persuade") (internal quotation marks omitted).

### a.    Whether the Deli Department Offers Food for Human Consumption on Its Premises

As discussed above in Part II.A.1. of this Decision and Order, the Investigator's Manual

states that, in determining whether an establishment offers food for human consumption on its

premises, the HIWO applies if the establishment "prepares and offers food to customers for

*immediate* consumption on its premises or in the *immediate* vicinity." (Dkt. No. 39, Attach. 4, at

20) (emphasis added).  In further interpreting this provision, the Investigator's Manual provides several examples of different food establishments that would fall under the HIWO and those that would not.  For example, a Chinese takeout that "does not provide facilities for consumption on the premises and offers no delivery service" is not a "restaurant" as defined by the HIWO.  (*Id.*) By contrast, a Jewish Style Delicatessen that provides "facilities for on-premises food consumption" is a restaurant covered by the HIWO.  (*Id.* at 21.)  Similarly, "pizza stands that provide facilities for on-premises consumption of individual slices of pizza and beverages are to be covered under the restaurant order.  However, pizza establishments that sell or sell and deliver whole pizza pies, and which maintain no table or other facilities for consumption on the premises are covered under the miscellaneous order." (*Id.* at 22.)

In the present case, it is undisputed that food purchased from the deli department is sold on a take-out basis in "to-go" containers and that there are no tables or counters in the immediate vicinity of the deli department where customers can sit and consume their food.  Indeed, it is also undisputed that customers do not actually purchase their food items at the deli department but must leave the deli department area and pay for their food in a check-out lane with all other store merchandise.  As discussed above in Part II.A.2. of this Decision and Order, Plaintiff appears to argue that these undisputed facts are irrelevant because many customers consume food purchased from the deli department in (a) the employee break room, (b) the parking lot, or (c) in the Subway restaurant located inside the Amsterdam Wal-Mart store.  Notwithstanding the fact that, to consume food in any of these locations, the customer would have to leave the *immediate* vicinity of the deli department, the Court finds this argument to be unpersuasive for the following three additional reasons.

First, the Court agrees with Defendants that whether customers consume food purchased from the deli department at tables or other accommodations provided by the Subway restaurant is unpersuasive because Subway, as a tenant of Wal-Mart, owns the tables and/or counters inside its restaurant. (Dkt. No. 48, ¶ 4 [Dunphy Decl.].) Therefore, the Court finds that the facilities located within the Subway restaurant have no bearing on the determination of whether Wal-Mart and/or the deli department provide facilities for food consumption on its premises.

Second, although Plaintiff argues that there is occasion when customers consume food in the Wal-Mart parking lot, conspicuously absent from Plaintiff's argument is any record evidence demonstrating that there are tables or any other facilities provided by Wal-Mart for food consumption in the parking lot. (Dkt. No. 46, Attach. 4, ¶¶ 11-12 [Pl.'s Decl.]; Dkt. No. 46, Attach. 5, ¶¶ 5-6 [Sheila Biasi Decl.]; Dkt. No. 46, Attach. 6, ¶ 8 [Mecca Decl.] [stating that employees occasionally order food from the deli department and then consume the food in their cars in the parking lot].)

Third, and finally, while employees may themselves be considered customers because they have purchased food from the deli department, the fact that they can bring that food back to the employee break room for consumption, which is presumably not accessible to the public, does not transform the deli department into a restaurant under the HIWO. More specifically, the Court once again notes that the break room is not within the immediate vicinity of the deli department. In addition, the Court agrees with Defendants that, if the facilities provided in an employee break room could be considered as part of a dining establishment, then any breakroom-equipped establishment that sells food would meet the definition of a restaurant under the HIWO. Therefore, such an interpretation, would undermine the HIWO's objective in

differentiating various food establishments that qualify as a restaurant under its regulations and in the hospitality industry and those that do not. *See S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (stating that "it is . . . well-established that a statute should be interpreted in a way that avoids absurd results") (internal quotation marks and alterations omitted); *Orozco v. Fresh Direct, LLC*, 15-CV-8226, 2016 WL 5416510, at *4 (S.D.N.Y. Sept. 27, 2016) (stating that the "Hospitality Industry Wage Order is clearly directed specifically to the hospitality industry" and noting that "[n]ot all service employment is the same . . . a law directed at restaurants and hotels (service providers specifically defined by the Hospitality Wager Order) cannot automatically be expanded to regulate every other service industry").

####         b.        Whether the Deli Department Engages in Catering or Other                   Similar Services for Purposes of the HIWO

As an initial matter, the Court once again notes that it is undisputed that the deli department does not offer table service, counter service, or curb service of any kind. (*Compare* Dkt. No. 38, ¶ 4 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 48, ¶ 4 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact.].)  However, both parties acknowledge that the deli department offers catering services but they dispute whether those services are sufficient for purposes of the HIWO.  In order to make this determination, the Court once again looks to the NYSDOL's Investigator's Manual for guidance.  The Investigator's Manual states, in relevant part, that a "food establishment is to be covered under the Restaurant Wage Order if it . . . *delivers* individual meals or portions or ready-to-eat food by box lunch or catering service." (Dkt. No. 39, Attach. 4, at 20) (emphasis added).  The Court agrees with Defendants that the example of a Jewish Style

Delicatessen provided by the Investigator's Manual is the most relevant and applicable to the deli department.  The Investigator's Manual states that a Jewish Style Delicatessen that does not provide facilities for on-premises food consumption is still covered under the HIWO if it offers catering services that consist of "*delivering* a quantity of sandwiches or a predetermined quantity of food placed on several decorated platters, *to a home or place of business*[.]" (*Id.* at 21.) (emphasis added).

Here, Defendants argue that the deli department did not deliver any food orders.  (Dkt. No. 37, at 17 [Defs.' Mem. of Law].)  Indeed, Defendants submit the declaration of Ryan Dunphy, the former store manager of the Amsterdam Wal-Mart store in support of this argument. (Dkt. No. 40, ¶ 12 [Dunphy Decl.].)  Significantly, Plaintiff does not respond to this argument in his opposition memorandum of law.[17]  Nonetheless, the allegations made in the Second Amended Complaint appear to corroborate Defendants' argument.  (Dkt. No. 28, ¶ 54 [Pl.'s 2d Am. Compl.] [alleging that "Wal-Mart will provide an associate to help pick the menu for your event or to fulfill any custom orders/requests" but failing to allege that Wal-Mart or the deli department also offers any kind of delivery service].)

Accordingly, for all of the foregoing reasons, the Court finds that the deli department does not meet the definition of a "restaurant" under the HIWO.

---

[17]     In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

c.      **Whether Plaintiff Is an Employee for Purposes of the HIWO**

Although the Court has found that the deli department does not meet the definition of a

"restaurant" under the HIWO, the Court notes that it would dismiss Plaintiff's second cause of

action on the alternative basis that he has failed to create a genuine dispute of fact regarding

whether he is an employee for purposes of the HIWO, for the reasons stated by Defendants in

their memoranda of law.  (Dkt. No. 37, at 19-21 [Defs.' Mem. of Law]; Dkt. No. 47, at 10-12

[Defs.' Reply Mem. of Law].)

d.      **Whether Additional Discovery Is Warranted**

Plaintiff states at different times in his opposition memorandum of law that additional

discovery is needed "to address the factual arguments raised by Wal-Mart." (Dkt. No. 46,

Attach. 8, at 6 [Pl.'s Opp'n Mem. of Law].)  "A party resisting summary judgment on the ground

that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant

to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: (1) what facts are

sought and how they are to be obtained, (2) how those facts are reasonably expected to create a

genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the

affiant was unsuccessful in those efforts." *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11,

13 (2d Cir. 2013) (internal quotation marks omitted).  Significantly, "[t]he failure to file a Rule

56(d) affidavit sufficiently explaining the need for additional discovery is itself sufficient

grounds to reject a claim that the opportunity for discovery was inadequate." *Lunts*, 11 F. App'x

at 14 (internal quotation marks omitted); *see also Paddington Partners v. Bouchard*, 34 F.3d

1132, 1137 (2d Cir. 1994) (concluding that a reference to the need for additional discovery in a

memorandum in opposition to summary judgment was not an adequate substitute for the required affidavit).

Here, "Plaintiff's opposition makes no mention of Rule 56(d), nor has he submitted the required affidavits explaining his need for additional discovery." *Labombard v. Winterbottom*, 14-CV-0071, 2015 WL 6801206, at \*6 (N.D.N.Y. Nov. 6, 2015) (D'Agostino, J.). "Significantly, Plaintiff does not discuss why he was unable to conduct any discovery or why he failed to seek additional time for discovery after receiving notice of Defendants' intention to move for summary judgment." *Labombard*, 2015 WL 6801206, at \*6.  Accordingly, the Court denies Plaintiff's request to deny Defendants' motion pending additional discovery.

### C.  Whether Plaintiff Should Be Permitted Leave to File and Serve a Third Amended Complaint

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 37, at 23-24 [Defs.' Mem. of Law].)  More specifically, because the Court has found that the HIWO does not apply to the deli department, any amendment to include additional plaintiffs and/or class representatives is futile.  In addition, the Court notes that Plaintiff has failed to comply with this District's Local Rules, which require a party moving to amend a pleading to "set forth specifically the proposed amendments and identify the amendments in the proposed pleading, *either through the submission of a red-lined version of the original pleading or other equivalent means*." N.D.N.Y. L.R. 7.1(a)(4) (emphasis added).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for partial summary judgment seeking dismissal of Plaintiff's second cause of action (Dkt. No. 36) is **<u>GRANTED</u>**.  The only claim remaining in

Plaintiff's Second Amended Complaint (Dkt. No. 28) is his First Cause of Action for sexual

harassment, discrimination and retaliation; and it is further

      **ORDERED** that Defendants' motion to strike certain portions of Plaintiff's declarations

that were submitted in opposition to their motion for summary judgment (Dkt. No. 50) is

**DENIED**; and it is further

      **ORDERED** that Plaintiff's cross-motion seeking leave of the Court to file and serve a

third amended complaint (Dkt. No. 46) is **DENIED**; and it is further

      **ORDERED** that this case is referred back to Magistrate Judge Baxter for a Rule 16

conference and the setting of pretrial deadlines.

Dated: March 22, 2017
      Syracuse, New York

                          Hon. Glenn T. Suddaby
                          Chief U.S. District Judge